IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 18, 2006 Session

IN THE MATTER OF L. A. B., d.o.b. 1/8/2003
ERIC BURT v. ELIZABETH FARLEY

Appeal from the Juvenile Court for Gibson County
No. 8664      Robert W. Newell, Judge

No. W2005-02268-COA-R3-JV - Filed June 9, 2006

This is a custody proceeding wherein Mother offered no proof except her own testimony. When the judgment was entered against her, she argues that the trial court should have conducted a comparative fitness analysis and that the case should be remanded for this purpose. Judgment of the juvenile court affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

WILLIAM H. INMAN, SP. J., delivered the opinion of the court, in which ALAN E. HIGHERS and DAVID R. FARMER, J.J., joined.

Jennifer Twyman King, Jackson, Tennessee, attorney for Appellant, Elizabeth Farley.

C. Timothy Crocker, Milan, Tennessee, attorney for Appellee, Eric Burt.

**OPINION**

The parents of L.A.B. [hereinafter "child"], whose custody is at issue in this case, were unmarried at his conception and remain so. Father was designated as the primary residential custodian. Mother contested this issue and presents for review "[w]hether the trial court erred in failing to properly compare the parties under the comparative fitness test, and thus holding the petitioner as the primary custodial parent."

Our review is de novo on the record accompanied by the presumption that the judgment, if factually based, is correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d), *Burlew v. Burlew*, 40 S.W.3d 465, (Tenn. 2001). No presumption attaches to questions of law. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

The child was born November 8, 2003 during a relationship between his parents that began in 2001. Father, age forty, is a farmer. Mother works a night shift at a factory. Mother had, and still

has, an ongoing relationship with Vance Jarrett of nine years duration. Mr. Jarrett is an African-American. Mother argues that this fact primarily motivated Father to seek custody of the child. No claim, however, is made that the racial issue influenced the trial judge. Rather, Mother argues that since the best interests of the child is an overriding principle, citing *Bah v. Bah*, 668 S.W.2d 663 (Tenn. Ct. App. 1983), a comparative fitness analysis must be made, which the trial judge failed to do, and therefore the case should be remanded with instructions. Mother did not make this argument at trial.

Analysis

The Father filed this petition seeking to establish paternity and custody of the child. Paternity is not disputed. Father, Mother, a psychologist, and four witnesses testified during the Father's presentation of testimony. These witnesses testified that Father, a prosperous farmer is of excellent repute; has attended church most of his life; intends to provide a quality education for child; intends to provide the child with health coverage; has contributed generously to the Child's support from birth and has enjoyed a good relationship with his son that was loving and nurturing. Father has never smoked, or used alcohol or drugs. A psychologist testified that Father was well adjusted with no limitations. He has never been married.

The Mother was called to testify during Husband's presentation of evidence. She stated that she had been dating Mr. Jarrett for eight or nine years, that he had been convicted of selling drugs as a juvenile, and at some time in his life he drank, although she did not know when he seemed to do so. Wife suffers from depression, for which she takes medication. She is a factory worker, currently working the second shift from 3 p.m. to 11 p.m. She leaves the child with her brother during her shifts and collects him around midnight to take him home. Mother testified this practice was 'normal and acceptable.' She stated that Mr. Jarrett resided with her before [the child] was born, and that he contributed $350.00 monthly support while Father was contributing $2,000.00 monthly. She thought this arrangement was 'normal' and believed Father "is a good father."

Wife called no witnesses. She now argues that her parental fitness was not compared to Father's fitness, as required by *Gaskill v. Gaskill*, 936 S.W.2d 626 (Tenn. Ct. App. 1996), and that the only way to correct this asserted error is by remanding the case to the trial court with instructions to conduct a fitness comparison and, presumably, to hear and consider additional testimony.

We are not appraised of the nature of any additional testimony. Wife had ample opportunity to present evidence of her fitness, other than her own testimony, if such evidence was available. She, or her attorney, or both, made the conscious decision not to present evidence if, indeed, some was available. Under these circumstances we cannot require another hearing or trial. A trial court's decision regarding custody or visitation should be set aside only when it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standard to the evidence found in the record." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). On the basis of the evidence presented, the trial judge concluded that Father should be the primary custodian of the child, and while he made no exhaustive analysis of the factors to be considered, it is evident that he was cognizant of the factors enumerated in Tennessee Code Annotated section 36-6-106:

(a) In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, such determination shall be made upon the basis of the best interest of the child. The court shall consider all relevant factors including the following where applicable:

(1) The love, affection and emotional ties existing between the parents and child;

(2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;

(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; provided, that where there is a finding, under § 36-6-106(a)(8), of child abuse, as defined in §§ 39-15-401 or 39-15-402, or child sexual abuse, as defined in § 37-1-602, by one (1) parent, and that a non-perpetrating parent has relocated in order to flee the perpetrating parent, that such relocation shall not weigh against an award of custody;

(4) The stability of the family unit of the parents;

(5) The mental and physical health of the parents;

(6) The home, school and community record of the child;

(7) (A) The reasonable preference of the child if twelve (12) years of age or older;

(B) The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; provided, that where there are allegations that one (1) parent has committed child abuse, as defined in §§ 39-15-401 or 39-15-402, or child sexual abuse, as defined in § 37-1-602, against a family member, the court shall consider all evidence relevant to the physical and emotional safety of the child, and determine, by a clear preponderance of the evidence, whether such abuse has occurred. The court shall include in its decision a written finding of all evidence, and all findings of facts connected thereto. In addition, the court shall, where appropriate, refer any

issues of abuse to the juvenile court for further proceedings;

   (9)  The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and

   (10)  Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

(b)  Notwithstanding the provisions of any law to the contrary, the court has jurisdiction to make an initial custody determination regarding a minor child or may modify a prior order of child custody upon finding that the custodial parent has been convicted of or found civilly liable for the intentional and wrongful death of the child's other parent or legal guardian.

There was unrefuted evidence of the love, affection and emotional ties existing between Father and child.  There was convincing evidence that Father was unequivably disposed to provide the child with food, clothing, housing, medical case and other necessary care.  The Father's circumstances of life were stable, his physical and mental health good.

Mother is twenty-seven years old.  She agrees that Father is a good father.  She has been romantically involved with a live-in boyfriend for many years, who did not testify in the case.  There was no evidence of her unfitness as a mother, or for that matter, of her fitness.  The sole negative aspect of her suitability was inherent in the depression she suffers.  Pursuant to the parenting plan adopted by agreement, Mother will enjoy joint custody with Father, and consequently will have the child about three (3) days each week.  We affirm the judgment of the trial court designating Father as the primary custodial parent.

Finally, we note that Mother injected a racial issue in this case in an apparent attempt to disparage the motivation of Father to file this petition.  So far as the record reflects the trial judge did not consider the "alleged effect of racial prejudice."  *See, Parker v. Parker*, 986 S.W.2d 557 (Tenn. 1999).  We have carefully reviewed the testimony, and find no evidence that race impacted the decision.

The judgment is affirmed with costs assessed to the Appellant and her surety.

_____
WILLIAM H. INMAN, SPECIAL JUDGE